ALGER v. ANDERSON et al.

(Circuit Court, M. D. Tennessee.  March 15, 1899.)

1. EQUITY JURISDICTION OF FEDERAL COURTS—SOURCE—STATE RESTRICTIONS.
    Subject to the constitutional and statutory limitations imposed on the chancery jurisdiction of the courts of the United States, and in the absence of a special act of congress, the jurisprudence of the high court of

chancery in England furnishes the chancery law which is exercised by the federal courts, and this law is administered uniformly throughout the several states of the Union, free from restraint of state legislation.

2. SAME—ADEQUATE REMEDY AT LAW.

The adequate remedy at law, which is the test of equitable jurisdiction in the courts of the United States (Judiciary Act 1789, § 16), is that which existed when the judiciary act was adopted, unless subsequently changed by act of congress.

3. SAME—FRAUD—WAIVER—EFFECT.

When a purchaser of real estate, either by election or laches, waives fraud of the vendor as a ground of rescission, he thereby loses also the right to urge the fraud as a ground of any other equitable relief.

4. SAME—RETENTION OF JURISDICTION—RESCISSION—COMPENSATION.

Under the seventh amendment to the constitution, which declares that, in suits at common law, when the value in controversy exceeds $20, the right of trial by jury shall be preserved, and section 16 of the judiciary act of 1789 (Rev. St. § 723), which provides that suits in equity shall not be sustained in the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law, where a contract of sale of real estate has become executed by a deed of conveyance with the usual covenants, and the purchaser files a bill in a circuit court of the United States to rescind on the ground of fraudulent misrepresentations of the vendor concerning his title, and it appears on the hearing that the purchaser has lost his right to rescind by election or laches, compensation for the price of portions of the land to which the vendor's title has failed cannot be decreed as alternative or secondary relief, on the ground that when equity once acquires jurisdiction it will award complete relief.

5. SAME—INTRICATE ISSUES AND COMPLICATED FACTS.

Nor will such relief be granted on the ground that intricate issues, with complicated facts, in suits at law, will be thereby avoided, since the purchaser may institute one suit against the vendor, or his personal representative if he be deceased, and recover on the covenants in the deed for all the land to which there is a failure of title.

6. SAME—VENDOR AND PURCHASER—FAILURE OF TITLE.

Where a purchaser of land has taken a deed with covenant of warranty, and has been let into possession, he cannot, before eviction, in the absence of insolvency of the vendor or fraud on his part, obtain a rescission in equity or resist payment of the price, merely because of defect of title in the vendor.

This is a bill by Russell A. Alger against T. B. Anderson and others. Dismissed without prejudice.

Albert D. Marks, J. J. Lynch, and Floyd Estill, for Russell A. Alger.

Williams & Lancaster, J. B. Branhan, Brown & Spurlock, A. S. Colyar, and W. J. Clift, for Mrs. Keith and the Andersons.

J. J. Vertrees, W. T. Murray, and Mr. Mathews, for John W. Gonce.

CLARK, District Judge. The bill, as originally presented, is one by the vendee against the vendor for rescission, upon the ground of fraudulent misrepresentation. I have concluded, upon the additional proof presented under a petition to rehear, that the plaintiff, with knowledge of the fraud, elected to abide by the transaction, and that with such knowledge he unreasonably delayed instituting suit to rescind, and the case in this aspect is justly subject to the objection of

laches, and upon both grounds the bill, in so far as rescission is concerned, must be dismissed.

An amended bill has been filed, which presents the question of compensation or damages as alternative or secondary relief in the event the primary relief of rescission cannot be had. Under this amended bill, it is sought to recover damages to the extent that there is a deficiency in the quantity of land conveyed by reason of a defect or want of title in the vendor to certain parts of the land actually embraced in the deed. The case presented by the record is really not one of defect of quality or surface deficiency, but of defective title in the vendor; for the deficiency in area comes about, not because the quantity of land called for and embraced within the deed is incorrectly given, but because the title to parts of this land fails by reason of superior conflicting claims, as plaintiff insists. It must be observed that the case is not one of an executory contract, but is one where a contract of sale of real estate has been executed by a deed of conveyance with the usual covenants, including one of warranty. The contention is that if the plaintiff, with knowledge of the fraud, has elected to affirm the transaction, or by laches has defeated his right to rescind, then, the fact of fraud being established, the court may proceed to decree, as secondary relief, compensation against the defendants for the purchase price of that portion of the land to which the vendor did not have valid legal title, and in this way grant complete relief in this suit. In addition to this, it is said that intricate issues, with complicated facts, in suits at law, would be avoided by this form of relief; but as the plaintiff could obviously institute one suit against the personal representative of the deceased vendor, and recover in an action on the covenants in the deed for all the land as to which there is a failure of title, it is not perceived that there is any real ground on which to base this suggestion. There would be only the question of the quantity of land to which there is a failure of title in such a suit. Furthermore, if I am right in the conclusion that the plaintiff has, by election and acquiescence, waived any right to the equitable relief of rescission upon the ground of fraud, it is not believed that it would be consistent to hold that the fraud may, nevertheless, be made the basis of equitable relief in a different form and to a less extent. My opinion is that when the plaintiff has, by affirmative election or laches, waived the fraud as a ground of rescission, he has also thereby lost the right to insist upon such fraud as a ground of any equitable relief at all. The proposition that the fraud, as a ground of one form of relief, is lost, while it may be made the basis of relief in a different form, cannot, in my opinion, be maintained. Fraud, as a ground of equitable relief, when once lost, is lost for all purposes. The objection of fraud, once waived, leaves the contract just as if the fraud had not occurred. McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29, reaffirming Grymes v. Sanders, 93 U. S. 55.

In considering and determining this question of compensation, then, I must treat the case as one from which fraud is eliminated, and determine whether or not relief, by way of compensation or damages, can be granted, and, if so, upon what ground consistently with the established jurisdiction of this court in equity. In dealing with this

question, it must be remarked that the jurisdiction of the **circuit courts** of the United States as courts of equity is subject to two important limitations. A case, with respect to the rights to be enforced and the remedy desired, must be one of such a character as to come within the recognized boundaries of jurisdiction in equity, as distinguished from jurisdiction at law, and the case must be one also which, by reason of the character of the parties or of the subject-matter of the suit, is one of federal, as distinguished from state, jurisdiction. In this case the court is concerned only with the limitation which marks the boundary of its jurisdiction in equity. In dealing with such a question, it must be borne in mind that chancery jurisdiction is conferred on the courts of the United States under certain limitations, constitutional and statutory, and that, under such limitations, the jurisprudence of the high court of chancery in England, in the absence of a special act of congress, furnishes the chancery law which is exercised by those courts in all of the states. State of Pennsylvania v. Wheeling & B. Bridge Co., 13 How. 518; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820. And this equity jurisdiction conferred on federal courts, being the same as that of the high court of chancery in England, is subject to neither limitation nor restraint by state legislation, and is uniform throughout the different states of the Union. Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75; McConihay v. Wright, 121 U. S. 205, 7 Sup. Ct. 940.

Under the provisions of the seventh amendment to the constitution, it is declared that in suits at common law, when the value in controversy exceeds $20, the right of trial by jury shall be preserved; and in section 16 of the original judiciary act of 1789, re-enacted in the Revised Statutes as section 723, it is provided that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law." So, too, in relation to the practice of the federal courts, the supreme court of the United States, pursuant to authority conferred by section 719 of the Revised Statutes, among other rules regulating equity practice, promulgated, in 1842, rule 90, which provides that:

"In all cases where the rules prescribed by this court or by the circuit court do not apply, the practice of the circuit court shall be regulated by the present practice of the high court of chancery in England, so far as the same may reasonably be applied consistently with the local circumstances and local conveniences of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice."

Of this rule, Judge Sawyer, in Lewis v. Shainwald, 7 Sawy. 403, 48 Fed. 492, said:

"The jurisdiction of this court is derived from the constitution and laws of the United States, and these rules are simply rules of practice, for regulating the mode of proceeding in the courts. They do not, and could not, properly, either limit or enlarge the jurisdiction of the court. The rule quoted simply regulates the practice in exercising the jurisdiction of the court in those respects wherein the rules adopted do not apply; but the practice of the high court of chancery is to be applied, not as controlling, but simply as furnishing just analogies to regulate the practice."

It will be thus seen that the foundation of equity jurisprudence, as well as of equity practice, in the courts of the United States, lies in

the system of the English court of chancery. But the practice of the English court of chancery adopted by rule 90 affects only matters of procedure, and does not apply in the determination of questions of jurisdiction, which depends upon, and is limited by, the constitution and laws of the United States. Lewis v. Shainwald, 48 Fed. 492.

But the question of jurisdiction is here to be considered and decided, and this must be determined by the essential character of the case. Van Norden v. Morton, 99 U. S. 378. And the right asserted, as well as the relief sought, must be equitable (Smith v. Bourbon Co., 127 U. S. 105, 8 Sup. Ct. 1043); for it is this which distinguishes the suit in equity from one at common law.

In State of Pennsylvania v. Wheeling & B. Bridge Co., 18 How. 462, Mr. Justice Nelson, delivering the opinion of the court, said:

"Original jurisdiction in equity, in a particular class of cases, conferred by the constitution on this court, has been interpreted to impose the duty to adjudicate according to such rules and principles as governed the action of the court of chancery in England, which administered equity at the time of the emigration of our ancestors and down to the period when our constitution was formed."

See, also, Fontain v. Ravenel, 17 How. 384.

And in McConihay v. Wright, 121 U. S. 206, 7 Sup. Ct. 942, Mr. Justice Matthews said:

"The adequate remedy at law, which is the test of equitable jurisdiction in these courts, is that which existed when the judiciary act of 1789 was adopted, unless subsequently changed by act of congress."

See, also, Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, and Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75.

Both forms of statement of the rule are correct. The court in the former cases was discussing the question as affected by the seventh amendment of the constitution, securing the right of trial by jury in suits at common law, while in the latter cases the restrictive effect of the provision contained in the sixteenth section of the judiciary act was being considered. The judiciary act was adopted or passed September 24, 1789, while the same congress, five days later, proposed the article subsequently ratified as the seventh amendment of the constitution, making them contemporaneous, as was remarked by Mr. Justice Story in Parsons v. Bedford, 3 Pet. 446. See, also, Grether v. Cornell's Ex'rs, 43 U. S. App. 782, 23 C. C. A. 498, and 75 Fed. 742; Klever v. Seawell, 22 U. S. App. 719, 12 C. C. A. 661, and 65 Fed. 393. The cases all agree that the power of the courts of chancery of the United States, under the constitution and the judiciary act, must be regulated by the law of the English chancery in administering the remedy for an existing right. Any special act of congress upon the subject, or any enlargement of equitable rights by state statute (as distinguished from an extension of the equitable remedy), enforceable in the equity courts of the United States, is put out of view now, as not affecting the matter under consideration. Jurisdiction in equity of the federal courts being subject to limitations substantially the same as that of the English courts of chancery, as understood and construed at the time of the adoption of the constitution and judiciary act of 1789, it will aid in the solution of the question to examine

briefly the history of this original source of jurisdiction in relation to the subject of compensation or damages. The rule being that this equity power must be construed according to equity jurisdiction in England as exercised at the time of the adoption of the constitution and of the judiciary act, any jurisdiction exercised by that court in its earlier history, but subsequently abandoned, and any enlargement of its jurisdiction by statute subsequent to 1789, are to be excluded. What may be called the common-law or original equity jurisdiction at that date has been changed and influenced so much subsequently by statute in England, at different periods, that the common-law and statutory jurisdiction must be understood, and at all times distinguished, in order to avoid confusion and apparent conflict in the English decisions themselves, by reason of a failure in the cases and in the books to notice or make clear the two sources of jurisdiction. In the absence of close attention to the influence of English statutes, the decisions of the English chancery courts, particularly since 1858, would become misleading, in relation to the subject of compensation or damages, with which I am now dealing. It has been said that the principle of compensation, in connection with specific performance, is a creation of the English courts of equity, and is a jurisdiction unknown to the law of Scotland. Stewart v. Kennedy (1890) 15 App. Cas. 102. The only right known to the common law of England, upon the nonperformance of a contract, in favor of the party injured by the breach, was a claim for damages, and the remedy of specific performance was a peculiar one, confined to chancery, and exercised in relation to executory, as distinguished from executed, contracts.

In Wolverhampton & W. Ry. Co. v. London & N. W. Ry. Co. (1873) L. R. 16 Eq. 439, the court said:

"There is a class of suits in this court, known as 'suits for specific performance of executory agreements,' which instruments are not intended between the parties to be the final instruments regulating their mutual relations under their contracts. We call those 'executory' contracts, as distinct from 'executed' contracts; and we call those contracts 'executed' in which that has been already done which will finally determine and settle the relative positions of the parties, so that nothing else remains to be done for that particular purpose. The common expression 'specific performance,' as applied to suits known by that name, presupposes an executory, as distinct from an executed, agreement,—something remaining to be done, such as the execution of a deed or a conveyance,—in order to put the parties in the position relative to each other in which, by the preliminary agreement, they were intended to be placed. Of course, if you pass from the technical to the etymological effect of the words, 'specific performance' might signify any direction given by the court for the doing of anything whatever in specie; and I cannot help thinking, in this class of cases, a little confusion has sometimes arisen from transferring considerations applicable to suits for 'specific performance,' properly so called. to questions which have arisen as to the propriety of the court requiring something or other to be done in specie."

The remedy, as originally administered, was confined mainly, though not exclusively, to contracts in relation to land. The original foundation of this jurisdiction in specific performance being the inadequacy of the common-law remedy for breach of contract, the jurisdiction was limited to that class of cases in which either there was no remedy at all at law, or no adequate or complete remedy, available to the party

aggrieved, and the remedy was closely restricted. The remedy was one which might be invoked either by the vendor or by the purchaser. Among cases in which the jurisdiction was exercised, and the limits of the remedy stated, may be mentioned Halsey v. Grant (1806) 13 Ves. 77, 79, and Alley v. Deschamps, Id. 224, 229. When this equitable jurisdiction, in relation to specific performance, had become well established, a party to a contract, within the scope of that jurisdiction, had open to him two remedies, in the event of the other party refusing to perform his part of the contract: He might either institute a suit in equity for specific performance, or bring an action at common law for damages for the breach; and in the subsequent case of Todd v. Gee (1810) 17 Ves. 278, Lord Eldon said:

"My opinion is that this court ought not, except under very particular circumstances, as there may be upon a bill for the specific performance of a contract, to direct an issue, or a reference to a master, to ascertain the damages. That is purely at law. It has no resemblance to compensation."

And the English cases throughout distinguish between damages and compensation in this sense; and I think it may be said that, prior to 1858, relief, by way of compensation, was granted only in cases of specific performance when the contract could not be fully executed, but only partially so, and for the purpose of satisfying the unexecuted part of the contract, and making the relief complete in one suit. As thus understood, compensation was incidental to, and in aid of, specific performance, where that could be granted only in part. It became apparent in time, however, that justice would be best done by giving damages as such in lieu of, or in substitution for, specific performance; but jurisdiction of the court, as defined in the previous decisions, did not permit such relief. Accordingly, in the year 1858, an act (21 & 22 Vict. c. 27), commonly called "Lord Cairns' Act," was passed in relation to this subject, the material provisions of which are found in section 2 of the act, and are as follows:

"In all cases in which the court of chancery has jurisdiction to entertain an application for an injunction against the breach of any covenant, contract or agreement, or against the commission or continuance of any wrongful act, or for the specific performance of any covenant, contract or agreement, it shall be lawful for the same court, if it shall think fit, to award damages to the party injured, either in addition to or in substitution for such injunction or specific performance; and such damages may be assessed in such manner as the court shall direct."

It will be observed that the very language of this act made it a condition precedent to the exercise of this discretionary power of awarding damages conferred by the act that the case should be one only in which an injunction or specific performance might be granted. Where, therefore, at the time of the commencement of the litigation, relief, by way of specific performance, was impossible, as where the plaintiff sought to enforce the allotment to him of shares, and these had been allotted to other persons before filing the bill, the plaintiff could not, under the Cairns act, get damages, as specific performance was, in such cases, impossible. Ferguson v. Wilson (1866) 2 Ch. App. 77.

By the judicature act of 1873, the jurisdiction conferred by the Cairns act, as well as all the jurisdiction in relation to damages, previously vested in, or exercised by, the common-law courts, became

vested in the high court of justice; and under this act, whether the high court can or cannot, in a given case, grant specific performance, it can give damages for breach of the contract in substitution for specific performance; and, although the Cairns act was repealed in 1883 by the statute law revision act (46 & 47 Vict. c. 49), the jurisdiction of the court under that act was saved by the repealing act itself. In the case of Dreyfus v. Guano Co., 43 Ch. Div. 316, it was decided that, under the Cairns act, jurisdiction to substitute damages for the injunction only arose where an actual wrong had been committed, and that the power was not applicable to quia timet actions. And in relation to damages in cases of specific performance it is said, in Adams, Eq. (8th Ed.) p. 91: "And the compensation given must be real compensation for a present loss, and not indemnity against a future risk."

In 2 Dart, Vend. (6th Ed.) p. 1103, the rule is thus laid down:

"The primary, and until recently the only, relief to be obtained in equity for the nonperformance of the contract, is a decree for specific performance. At one time there was a floating idea in the profession that the court might, under its general jurisdiction, award compensation for nonperformance, in the event of the primary relief failing. Possibly the power of granting such subsidiary relief may be inherent in the court, but, if so, the whole current of modern authorities is against its exercise; nor in cases prior to Lord Cairns' act did it make any difference that compensation was sought, not against the owner of the estate, but against a person who falsely assumed authority to sell; nor, except under special circumstances, would a prayer in the alternative for the return of the deposit prevent the dismissal of the bill. Lord Cairns' act has been repealed, but the effect of the repealing act is to preserve, if not to enlarge, the jurisdiction which the former act conferred; and accordingly now, whenever the court has jurisdiction to entertain a suit for specific performance, it may, in its discretion, award damages to the party injured, either in addition to, or substitution for, the primary relief, such damages to be assessed as the court shall direct. It need hardly be added that the jurisdiction conferred by Lord Cairns' act related to the remedy only, and created no new right to damages where none were formerly recoverable. It must be remembered that an alternative claim for damages, merely as a substitute for specific performance, cannot succeed, if the plaintiff has himself made the performance of the contract impossible, and, in order to obtain damages for the defendant's breach in such a case, the plaintiff should at once, on his becoming incapable of performing his part, amend his claim to that effect."

And in Newham v. May (1824) 13 Price, 751, Alexander, L. C. B., said:

"If I thought that this case turned upon the question of jurisdiction, I should take time to consider the point further. It is not in every case of fraud that relief is to be administered in a court of equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud upon the sale of a chattel, no one, I apprehend, ever thought of filing a bill in equity. The cases of compensation in equity I consider to have grown out of the jurisdiction of the courts of equity as exercised in respect of contracts for the purchase of real property, where it is often ancillary, as incidentally necessary to effectuate decrees of specific performance. This, however, appears to me to be no more than a common case of fraud by means of misrepresentation, raising a dry question of damages; in effect, a mere money demand."

And in Williams v. Higden (1828) Coop. Ch. Prac. 500, it was said:

"The defendant, conceiving himself to be entitled to an estate, had agreed to sell the same to the plaintiff, who paid the purchase money. Subsequently it was discovered that the defendant had not a right to the estate, but only

to a sum of money to be raised by the sale of it.   The object of the bill was that the plaintiff might be paid such sum of money, and also damages in respect of the defendant's defect of title.   The plaintiff takes whatever interest in the estate the defendant had; but the authorities giving damages in this court, by reason of a vendor's selling property that was not his own, have been reviewed of late years, and overruled."

See, to the same effect, Sainsbury v. Jones (1839) 5 Mylne & C. 13. The same proposition is stated in another form, as follows:

"Where either of the parties to the contract has procured the other to enter into it by means of a material misrepresentation, or such a concealment of a material fact as is considered in equity equivalent to a misrepresentation, the court will not merely decline to enforce, but will even rescind, the contract, unless, it seems, the party defrauded elect to have the misrepresentation made good, and, in a suit by a purchaser, will direct his deposit to be returned, and declare a lien for it on the property, but it cannot award damages by way of compensation to the plaintiff under its general jurisdiction; nor does Lord Cairns' act (21 & 22 Vict. c. 27) apply to a case where the suit *is not for the specific performance*, but for the *rescission of the contract;* and since the judicature acts, although the courts have power to administer all kinds of relief, it is plain that there is no substantive right to damages, where, as in the present case, there was none before the acts."   (The italics here and elsewhere are mine.)   1 Dart, Vend. (6th Ed.) p. 116.

See, also, 2 Dart, Vend. pp. 898, 900, 1105.

Sugden (Lord St. Leonard), discussing the common-law action of deceit where the right to rescind is lost, declares the rule as follows:

"Although in equity a party may be entitled to get rid of a contract founded on fraudulent representations, still cases may occur where a purchaser might recover damages at law for false representations, and yet be prevented, from his own conduct, from rescinding the contract in equity, and the relief in equity can only be to rescind the contract.   Damages or compensation must be sought at law.   In equity, after the contract is executed by payment of the money and conveyance, a bill cannot be filed for compensation.   Thus the jurisdiction stood before the recent legislation, which, as we have seen, has authorized courts of equity to give damages in certain cases, and courts of law, to some extent, to enforce equitable rights and to admit equitable defenses.   Generally speaking, a purchaser, after a conveyance, has no remedy except upon the covenants he has obtained, although evicted for want of title; and however fatal the defect of title may be, if there is no fraudulent concealment on the part of the seller, the purchaser's only remedy is under the covenants."   Sugd. Vend. (14th Ed.) p. 251.

The same author, treating the subject of damages in equity, says:

"Equity will not give the purchaser compensation where he filed a bill to have the contract delivered up on account of the defective title of the vendor. But he could obtain a decree for the delivering up of the contract without prejudice to his remedy at law for breach of it.   Neither could he require such interest as the seller had in the estate and damages in respect of his defect of title."

See, also, Sugd. Vend. (14th Ed.) p. 55.

It is unnecessary to say that these books by Sugden and Dart, from which I quote, have often been pronounced standard works by the English courts, and also cited and relied on by those courts, as containing a correct exposition of the law of England upon the subject treated.

In the recent case of Joliffe v. Baker, 11 Q. B. Div. 255, the court of queen's bench division undertook expressly to examine the English cases upon the subject here in question.   As a result of a review of the cases, that court, approving Todd v. Gee (1810) 17 Ves. 278, said (Williams, J., delivering the opinion):

"After the best consideration that I am able to give to these conflicting authorities, I am of opinion. in the first place, that it has been the established practice of the court of chancery that a bill for 'compensation,' properly so called, the purchaser retaining the property, could not be entertained after the completion of the contract and execution of the conveyance, and that the jurisdiction under which compensation was granted was exercised *only as ancillary to specific performance, and was never exercised independently.* The evidence of this is principally negative, but it was distinctly recognized and stated in the case of Newham v. May. In that case the purchaser of freehold houses filed his bill after conveyance praying for compensation for the difference in value of the property by reason of the amount of rent having been misrepresented by the vendor. The bill was dismissed. Alexander, C. B., stating it as his opinion that the remedy in such cases was by action at law for damages, and that the jurisdiction of equity in cases of compensation had grown up only as ancillary to, and incidentally necessary to effectuate, decrees of specific performance of contracts for the sale of real property. A similar opinion was expressed by Lord Eldon in Todd v. Gee, in which he followed the course of earlier authorities. See Gwillim v. Stone, 14 Ves. 128, and Blore v. Sutton, 3 Mer. 237. This rule seems to me, also, to rest upon sound principles of law and equity; because, if it were otherwise, a purchaser might have conveyances, and, while still insisting upon retaining the estate, ask for an abatement of the agreed purchase money, which would be wholly contrary to every principle. If he came before conveyance, he might, if misled, even by an innocent error, fairly say to the vendor: 'I have been misled, and do not wish to have the estate. and, if you insist upon my performing the contract and taking it, a fair abatement from the price ought to be made,' in which case the vendor would be placed in a fair position, because, if he was unwilling to part with his estate at the reduced price, he might retain it. On the other hand, if the purchaser were entitled to insist upon retaining the estate, and at the same time claim an abatement of the price, the result would be that a vendor, on account of a perfectly innocent and unintentional error. might be compelled to part with his estate for a price that he never had, and never would have, agreed to, which appears to me contrary, not only to the express terms of the contract, but to every principle of law and justice."

See, also, Palmer v. Johnson (1884) 13 Q. B. Div. 351.

It will thus plainly appear, I think, without more extended review of the English cases and the history of equity in the English system, that, in the absence of statutory authority, relief by way of compensation was limited almost entirely to cases of specific performance, and was relief in those cases incidental to specific performance granted in part at least. The English cases seem to furnish no instance in which compensation was allowed, or damages assessed, when on the final hearing other relief equitable in its nature was not granted, and those cases recognize throughout the clear distinction between compensation as allowed in connection with specific performance and damages as a distinct form of relief or remedy. I refer, of course, to the state of the decisions at the time our constitution was adopted. I have been unable to find any case in which damages or compensation was sought or allowed in bills for rescission of an executed contract when rescission was denied and there was no independent ground of equity jurisdiction. Discussing the remedy of rescission and cancellation by reason of fraud, Mr. Adams, in his work on Equity (8th Ed.) at page 176, says:

"On the other hand, all unfounded allegations of fraud are discouraged by the court; and if such allegations are made, and not established, the plaintiff will not, in general, be allowed to resort to any secondary ground of relief."

92 F.—45

In 2 Daniell, Ch. Prac. (6th Ed.) *1080, stating the doctrine of the English court of chancery in relation to the assessment of damages, it is said:

"Formerly, the court of chancery had, in no case, power to award damages; but now, whenever it has jurisdiction to entertain an application for an injunction against a breach of any covenant, contract, or agreement, or against the commission or continuance of any wrongful act, or for the specific performance of any covenant, contract, or agreement, the court may, if it think fit, award damages to the party injured, either in addition to, or in substitution for, such injunction or specific performance, and such damages may be assessed in such manner as the court shall direct."

The Cairns act is then referred to as sustaining this statement in regard to the existing law in England on the subject. That act is then commented upon as follows:

"These provisions, however, do not extend the jurisdiction of the court; and damages will not, therefore, be given in cases where, previously to the act, the court would not have ordered an injunction or decreed specific performance. Where the court is of opinion that the plaintiff should have proceeded at law, no assessment of damages will be directed in equity, but the bill will be dismissed without prejudice to the plaintiff's right to proceed at law."

This is a statement of the effect of the Cairns act and of chancery jurisdiction before the act.

The rule, as laid down in the works of Dart and Sugden and the English cases subsequent in time to Todd v. Gee, is no longer the subject of doubt or question. As I have said, the English chancellors maintained a distinction between damages as such and compensation as decreed in specific performance cases. This was really a distinction in name, and not in substance. In reference to such a distinction, it has been well said:

"In certain cases of fraud (that is, willfully or recklessly false representation of fact), the court of chancery had, before the judicature acts, concurrent jurisdiction with the courts of common law, and would award pecuniary compensation, not in the name of damages, indeed, but by way of restitution or 'making the representation good.' In substance, however, the relief came to giving damages under another name, with more nicety of calculation than a jury would have used." Pol. Torts, 227.

It is significant that the English chancellors were unwilling to acknowledge that they were exercising legal jurisdiction even to the limited extent of ancillary relief in specific performance. To have acknowledged that such relief was by way of damages would have implied the exercise of jurisdiction at law to that extent, and the new name of "compensation" or "restitution" was adopted for what was nothing but damages.

Passing now from English authority, it remains to examine briefly the doctrine enunciated on this side of the Atlantic. A somewhat full and separate treatment of this subject of compensation and damages will be found in 2 Story, Eq. Jur. §§ 794–799. After reference to the English decisions, the author, apparently approving the decision in Todd v. Gee, already referred to, says:

"Indeed, Lord Eldon seems to have doubted the authority to decree compensation, and to have held the opinion that a court of equity ought not to give relief in the shape of damages, but only compensation out of the purchase money; or, at least, that a court of equity ought not, except under very par-

ticular circumstances, upon a bill for specific performance to direct an issue or a reference to a master to ascertain damages, as it is a matter purely at law, and has no resemblance to 'compensation,' strictly so called. And his opinion seems to have been adopted on other recent occasions."

Continuing the discussion, the author then gives what may be regarded as his own views on the subject, in sections 798 and 799, as follows:

"There is, however, a distinction upon this subject which is entitled to consideration, and may perhaps reconcile the apparent diversity of judgment in some of the authorities. It is that courts of equity ought not to entertain bills for compensation or damages except as incidental to other relief, where the contract is of such a nature that an adequate remedy lies at law for such compensation or damages. But, where no such remedy lies at law, there a peculiar ground for the interference of courts of equity seems to exist, in order to prevent irreparable mischief or to avoid a fraudulent advantage being taken of the injured party. Thus, where there has been a part performance of a parol contract for the purchase of lands, and the vendor has since sold the same to a bona fide purchaser for a valuable consideration without notice, in such a case, inasmuch as a decree for a specific performance would be ineffectual, and the breach of the contract, being by parol, would give no remedy at law for compensation or damages, there seems to be a just foundation for the exercise of equity jurisdiction. In the present state of the authorities, involving, as they certainly do, some conflict of opinion, it is not possible to affirm more than that the jurisdiction for compensation or damages does not ordinarily attach in equity except as ancillary to a specific performance or to some other relief. If it does attach in any other cases, it must be under very special circumstances, and upon peculiar equities: as, for instance, in cases of fraud, or in cases where the party has disabled himself, by matters ex post facto, from a specific performance, or in cases where there is no adequate remedy at law."

Whether or not the apparent diversity of judgment in some of the authorities has reference to a conflict in the English cases only, is not stated. It is probable that the diversity of opinion mentioned had reference to the cases before, and not to those subsequent to, Todd v. Gee; for it is certainly true that the English cases do involve some conflict of opinion, that is, the decisions before Todd v. Gee.

I do not think that it is to be doubted that Todd v. Gee and other more recent decisions correctly declare the true doctrine upon the subject as it existed at the date of our judiciary act, in 1789, overruling, at least, one or two earlier cases to the contrary.

In Ferson v. Sanger, 8 Fed. Cas. 1165 (No. 4,751), it was distinctly adjudged that courts of equity will not entertain jurisdiction of a suit for damages arising out of fraud, where damages are the sole object of the bill, the remedy at law being complete. This proposition is conceded by the plaintiff's eminent counsel. It was further adjudged in this case that, where relief is sought which can be had only in equity, and damages are claimed as incidental to that relief, equity, having proper possession of the cause for relief that is purely equitable, to prevent a multiplicity of suits will proceed to determine the whole cause. The opinion makes it clear that this jurisdiction to grant incidental relief, which is legal in its nature, is exercised only when the equitable relief is granted, and not when a case for equitable relief, although stated in the bill, fails on the hearing. It is pointed out, also, in this case, that the English case of Todd v. Gee, 17 Ves. 278, materially modifies the opinion expressed in some earlier cases in the English courts.

In the early case of Russell v. Clarke's Ex'rs, 7 Cranch, 69, it was adjudged that on questions of fraud there was a complete remedy at law, and that where the only ground of equitable jurisdiction was the discovery of facts solely within the knowledge of the defendant, and the defendant, by his answer, disclosed no such facts, the bill should be dismissed, and the plaintiff permitted to assert his rights in a court of law. So, in Paton v. Majors, 46 Fed. 210, it was ruled that fraud, of itself, would not bring a case within the cognizance of a court of equity, and that there must be some additional circumstances which must be found among those recognized as conferring equity jurisdiction; that an action simply to recover money upon the ground of a fraud was insufficient to give equity jurisdiction. Nor can a bill be sustained which seeks to recover damages for a fraudulent misrepresentation (White v. Boyce, 21 Fed. 228), or for a fraudulent conspiracy (Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556).

In Hipp v. Babin, 19 How. 271, the court, through Mr. Justice Campbell, said:

"Nor can the court retain the bill under an impression that a court of chancery is better adapted for the adjustment of the account for rents, profits, and improvements. The rule of the court is that when a suit for the recovery of the possession can be properly brought in a court of equity, and a decree is given, that court will direct an account as an incident in the cause. But, when a party has a right to a possession which he can enforce at law, his right to the rents and profits is also a legal right, and must be enforced in the same jurisdiction. The instances where bills for an account of rents and profits have been maintained are those in which special grounds have been stated, to show that courts of law could not give a plain, adequate and complete remedy."

This language is expressly approved and adopted in Root v. Railway Co., 105 U. S. 213, which is now a leading case upon this subject.

Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, is an instructive case. Suit was brought to reinstate a contract for which an assignment of another contract had been substituted, and to cancel the assignment on the ground of fraud in procuring the exchange, and, as alternative relief, to restore to the plaintiff certain sums of money paid to the defendants, and for damages sustained by fraudulently obtaining surrender of the original contract from the plaintiff. Mr. Justice Gray, speaking for the court, said:

"In the judiciary act of 1789, by which the first congress established the judicial courts of the United States and defined their jurisdiction, it is enacted that 'suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate and complete remedy may be had at law.' Act Sept. 24, 1789, c. 20, § 16 (1 Stat. 82); Rev. St. § 723. Five days later, on September 29, 1789, the same congress proposed to the legislatures of the several states the article afterwards ratified as the seventh amendment of the constitution, which declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' 1 Stat. 21, 98. The effect of the provision of the judiciary act, as often stated by this court, is that 'whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.' Hipp v. Babin, 19 How. 271, 278; Insurance Co. v. Bailey, 13 Wall. 616, 621; Grand Chute v. Winegar, 15 Wall. 373, 375; Lewis v. Cocks, 23 Wall. 466, 470; Root v. Railway Co., 105 U. S.

189, 212; Killian v. Ebbinghaus, 110 U. S. 568, 573, 4 Sup. Ct. 232. In a very recent case the court said: 'This enactment certainly means something; and, if only declaratory of what was always the law, it must, at least, have been intended to emphasize the rule and to impress it upon the attention of the courts.' New York Guaranty & Indemnity Co. v. Memphis Water Co., 107 U. S. 205, 214, 2 Sup. Ct. 286. Accordingly, a suit in equity to enforce a legal right can be brought only when the court can give more complete and effectual relief, in kind or in degree, on the equity side than on the common-law side, as, for instance, by compelling a specific performance: or the removal of a cloud on the title to real estate; or preventing an injury for which damages are not recoverable at law, as in Watson v. Sutherland, 5 Wall. 74; or where an agreement procured by fraud is of a continuing nature, and its rescission will prevent a multiplicity of suits, as in Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215, and in Jones v. Bolles, 9 Wall. 364, 369. In cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort or for money had and received. Parkersburg v. Brown, 106 U. S. 487, 500, 1 Sup. Ct. 442; Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820.

After stating that the case did not require the court to consider the question under what circumstances a bill showing no ground for equitable relief, and praying for discovery as incidental only to the relief sought, would be open to demurrer to the whole bill, nor whether, if discovery were obtained, the case could be retained for the purpose of granting full relief, within the rule stated in the books, but as to the limits of which the authorities were conflicting, the court observed:

"It is enough to say that the case clearly falls within the statement of Chief Justice Marshall: 'But this rule cannot be abused by being employed as a mere pretext for bringing causes, proper for a court of law, into a court of equity. If the answer of the defendant discloses nothing, and the plaintiff supports his claim by evidence in his own possession, unaided by the confessions of the defendant, the established rules, limiting the jurisdiction of courts, require that he should be dismissed from the court of chancery, and permitted to assert his rights in a court of law.' Russell v. Clarke's Ex'rs, 7 Cranch, 69, 89. See, also, Horsburg v. Baker, 1 Pet. 232, 236; Brown v. Swann, 10 Pet. 497, 503."

The decree of the circuit court dismissing the bill was affirmed, without prejudice to an action at law.

Scott v. Neely, 140 U. S. 111, 11 Sup. Ct. 712, was a suit in equity to subject the property of the plaintiff to the payment of a simple contract debt, and in aid thereof to set aside as fraudulent certain conveyances to the wife of the debtor defendant. It was sought to uphold the jurisdiction to maintain such a suit in the courts of the United States upon the ground that the statutes of Mississippi had created a new equitable right in the creditor, which might be enforced in the courts of the United States. The decree of the court below sustaining the jurisdiction was reversed, and the bill dismissed, without prejudice to an action at law. The court said:

"All actions which seek to recover specific property, real or personal, with or without damages for its detention, or a money judgment for breach of a simple contract, or as damages for injury to person or property, are legal actions, and can be brought in the federal courts only on their law side. Demands of this kind do not lose their character as claims cognizable in the courts of the United States only on their law side because in some state courts, by virtue

of state legislation, equitable relief in aid of the demand at law may be sought in the same action. Such blending of remedies is not permissible in the courts of the United States."

And as was declared in the subsequent case of Scott v. Armstrong, 146 U. S. 512, 13 Sup. Ct. 152:

"The jurisprudence of the United States has always recognized the distinction between law and equity, as, under the constitution, matter of substance, as well as of form and procedure, and, accordingly, legal and equitable claims cannot be blended together in one suit in the circuit courts of the United States, nor are equitable defenses permitted."

It is a clear implication, I think, from well-considered cases of the highest authority, that where equitable relief is sought, and along with it also secondary or alternative relief of a legal nature, if the suit fails entirely as to the equitable relief sought the courts of the United States cannot retain the case on the equity side for the pur- pose of administering relief purely legal in its character, in substitution for the equitable relief. It is not sufficient that the bill may present a case for equitable relief. That this is the English rule sufficiently appears in the authorities already cited. A suggestion will be found in favor of a contrary proposition in a dictum by Mr. Justice Woodbury at the circuit in Warner v. Daniels, 29 Fed. Cas. 246 (No. 17,181), while a similar suggestion in relation to the same subject, by the same learned judge, in Ferson v. Sanger, 8 Fed. Cas. 1,170 (No. 4,752), points in an opposite direction. The difficulty felt upon the subject obviously grew out of the conflict in some of the earlier English cases. In Clark v. Wooster, 119 U. S. 325, 7 Sup. Ct. 218, Mr. Justice Bradley, delivering the judgment of the court, said:

"It is true that where a party alleges equitable ground for relief, and the allegations are not sustained, as where a bill is founded on an allegation of fraud, which is not maintained by the proofs, the bill will be dismissed in toto, both as to the relief sought against the alleged fraud and that which is sought as incidental thereto."

Manufacturing Co. v. Williams, 37 U. S. App. 109, 15 C. C. A. 520, and 68 Fed. 489, was a suit in equity for the infringement of patents and for an account of damages and profits. On the facts of the case, the court held that inexcusable delay on the part of the plaintiff was such as to require a court of equity to refuse the equitable relief sought, which was relief through injunction, and that, the equitable relief having been refused, the suit would not be entertained for the mere purpose of an account of past damages and profits, that relief being legal in its nature. Judge Lurton, in giving the opinion of the court, said:

"That this doctrine of courts of equity requiring reasonable diligence as a condition precedent to the exercise of their discretionary powers is applicable in patent cases is manifest from a consideration of the nature of the relief sought against an infringer. Equity will not entertain a suit merely involving an ascertainment of damages and profits. This question was elaborately considered, and expressly decided, in Root v. Railway Co., 105 U. S. 189. Equitable jurisdiction in patent cases is therefore subject to the *general principles of equity jurisprudence*, and the power to grant injunctions in such cases, according to the provisions of section 4921 of the Revised Statutes, must be 'according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable.'"

In Smith v. Bourbon Co., 127 U. S. 105, 8 Sup. Ct. 1043, the bill was brought by a judgment creditor of a railroad, alleging that the board of commissioners of Bourbon county had subscribed to the stock of the railroad company, and had become bound to the company to issue to it bonds of the county equal to the par value of the stock subscribed for, and that the bonds had not been issued, and seeking to compel the company to assign to the complainants its claim against the county, and, second, a decree against the county ordering it to issue the bonds and deliver them to complainant. It was held that the relief sought against the railroad might be granted by compelling it to assign this claim to the complainant, with a right to sue for the bonds in the name of the company; but it was further adjudged that the equitable nature of the complainant's relief against the company furnished no ground for the support of such a bill in equity against the county, as the right to proceed against the county and its officers, to compel the issue of the bonds, was a purely legal right, to be prosecuted at law, and that the bill should be dismissed as to the county, without prejudice to an action at law. This case was followed and applied in Association v. Hutsell, 31 U. S. App. 244, 14 C. C. A. 97, and 66 Fed. 799, where it was again held that fraud alone furnishes no ground upon which a court of equity will afford relief, and that, unless preventive or other equitable relief is sought, the remedy for fraud is at law. It was further said that such a bill, alleging fraud and asking a mere judgment for damages upon a transaction which was passed and affirmed, was a case over which there was a want of equitable jurisdiction. See, to the same effect, Smyth v. Banking Co., 141 U. S. 656, 12 Sup. Ct. 113.

In Dowell v. Mitchell, 105 U. S. 430, the facts were that a surviving partner had executed a note for a debt of the firm, and, to secure its payment, executed a mortgage on real estate which was in fact the individual property of the deceased partner. Foreclosure suit was brought against the surviving member and administrator and heirs of the deceased partner. So much of the bill as sought foreclosure was dismissed, and decree rendered against the administrator and surviving partner for the amount due on the notes purporting to be secured by the mortgage. The supreme court, affirming so much of the decree as declared the real estate the individual property of the deceased partner, said:

"When this fact was established by the evidence, the court below, sitting as a court of equity, had no jurisdiction to proceed in the cause. There was nothing on which it could act but the promissory notes, and to enforce their payment the complainants had a plain, adequate, and complete remedy at law. The rule is that where a cause of action cognizable at law is entertained in equity on the ground of some equitable relief sought by the bill, which it turns out cannot, for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further, and should dismiss the bill without prejudice. Russell v. Clarke's Ex'rs, 7 Cranch, 69; Price's Patent Candle Co. v. Bauwen's Patent Candle Co., 4 Kay & J. 727; Baily v. Taylor, 1 Russ. & M. 73; French v. Howard, 3 Bibb, 301; Robinson v. Gilbreth, 4 Bibb, 183; Nourse v. Gregory, 3 Litt. 378."

The money decree upon the note was accordingly reversed, with a direction to dismiss the bill without prejudice.

Without further statement of the cases, this review must be limited by reference to some well-considered cases in which this distinction between legal and equitable relief is recognized and enforced. Klever v. Seawell, 22 U. S. App. 715, 12 C. C. A. 661, and 65 Fed. 393; In re Mudsill Min. Co., 31 U. S. App. 112, 13 C. C. A. 77, and 65 Fed. 647; Grether v. Cornell's Ex'rs, 43 U. S. App. 770, 23 C. C. A. 498, and 75 Fed. 742; McConnell v. Society, 37 U. S. App. 213, 16 C. C. A. 172, and 69 Fed. 113; Lewis v. Cocks, 23 Wall. 466; Brown v. Swann, 10 Pet. 496.

In Klever v. Seawell it was said the phrase, "suits at common law," found in the seventh amendment to the constitution, preserving trial by jury, is used in contradistinction to equity and admiralty and maritime jurisprudence; adopting the language of Parsons v. Bedford, 3 Pet. 433.

In a recent, but standard, work on Equity, the rule is laid down in language as follows:

"In England, prior to St. 21 & 22 Vict. c. 27 (commonly known as 'Sir Hugh Cairns' Act'), damages or compensation were decreed in favor of a complainant in equity *only as incidental to other relief sought by the bill and actually granted*, or where there was no adequate remedy at law, or where some peculiar equities intervened. By that statute it is, in substance, enacted that, in cases of contracts, where the court has jurisdiction by way of injunction or specific performance, it shall be lawful for the same court, if it shall think fit, to award damages to the injured party, either in addition to or in substitution for such injunction or specific performance. There had, indeed, been some decisions in England in which the right of a court of equity to decree compensation for the injury sustained by the nonperformance of a contract, in the event of the primary relief for a specific performance failing, had been recognized, and bills were not unfrequently filed in which such relief was prayed. But the case of Denton v. Stewart, in which that doctrine was promulgated, was subsequently overruled, and the law was stated by Lord St. Leonards, in the last edition of his Treatise on Vendors and Purchasers, to be against the power of the court to award compensation in such cases, independently of the statute." Bisp. Eq. (5th Ed.) § 477.

For the same proposition, stated in a different form, see Id. § 395.

Stebbins v. Eddy (1827) 22 Fed. Cas. 1192, 4 Mason, 414, so much relied on by plaintiff's counsel, is inapplicable. The language quoted as supporting plaintiff's contention was used in reference to the case of a mutual mistake as to the quantity of land in a sale by the acre, or a case of fraudulent misrepresentation as to the acreage. Fraud was a necessary element, as the rule was stated. This is a case in which fraud can no longer be considered, and, furthermore, the statement was a mere dictum. Where failure or defect of title is the objection, and there is a complete remedy at law in an action on the covenant, the dictum, if sound, could hardly apply.

The discussion of this subject of relief by way of damages or compensation in equity has been thus far somewhat in its general aspect. I think it will sufficiently appear that in the courts of the United States, following in this respect the English equity jurisprudence at the time of the adoption of the constitution, relief by way of compensation or damages is limited mainly to cases of specific performance, and that the jurisdiction to grant such relief is and has been exercised in other cases only under extraordinary and peculiar circumstances, and then only to grant ancillary relief. I have also re-

ferred sufficiently to the distinction between "compensation" in this limited sense and "damages" in the general sense of compensation for the breach of a contract. It seems to me that it can also be safely affirmed that, in the exercise of the limited equity jurisdiction in the courts of the United States, a bill which makes a case for equitable relief, and also in the alternative for the enforcement of a legal right, cannot be sustained when no part of the equitable relief is granted, as this would be to exercise jurisdiction over a purely legal demand, as to which the right of trial by jury is secured.

I will now refer to another aspect of this case, which leads to the same result. The secondary relief sought, it seems, is legal, and the right on which the claim is based such as grows out of the covenants in the deed only, and is therefore also legal. This is an executed, and not an executory, contract. The purchaser is in possession under a deed with covenant of warranty, and, so far, his possession does not appear to have been disturbed. The right to relief on the ground of fraud or fraudulent misrepresentation having been lost by delay, eliminates that element from the case. The case, then, is one where a purchaser of land has taken a deed with covenant of warranty, and has been let into possession; and the long-established rule in Tennessee is that, in the absence of fraud or insolvency, and before eviction, he cannot, in equity, claim rescission, resist payment of purchase money, or have purchase money refunded, on the ground merely of defect of title in the vendor. He must, in such cases, be left to his remedy at law on the covenant of warranty. Topp v. White, 12 Heisk. 165; Barnett v. Clark, 5 Sneed, 435. It was so adjudged by this court in the recent cases of White v. Ewing, 37 U. S. App. 365, 16 C. C. A. 296, and 69 Fed. 451, and Jourolmon v. Ewing, 47 U. S. App. 679, 26 C. C. A. 23, and 80 Fed. 604. This is the general rule, as well as the rule in Tennessee, as was declared in the last case cited. See, also, Andrus v. Refining Co., 130 U. S. 648, 9 Sup. Ct. 645; Noonan v. Lee, 2 Black, 500; Patton v. Taylor, 7 How. 133.

This is undoubtedly the general rule in England, as will be seen from the authorities already cited, and particularly from Joliffe v. Baker. It is somewhat common in England for vendors to guard against errors and misdescriptions by an express stipulation that they shall not annul or defeat the sale, but that compensation shall be made for the difference in value. This is known as the common condition for compensation. It would happen that such a condition in the executory contract might not be carried into the executed contract of conveyance. The question came before the English courts whether such a condition could be enforced after completion of the sale by deed, in view of the accepted general rule that, after conveyance, the vendee, in the absence of fraud, must rely on the covenants in the deed.

In 2 Dart, Vend. p. 904, the law on the subject is thus enunciated:

"A bill filed, after conveyance, simply for compensation in respect of defects in the estate, will be dismissed in the absence of an express condition for compensation, although such defects, accompanied by fraudulent misrepresentation or concealment, may be a ground for rescinding the executed contract. The question of the nature and extent of the common condition for compensation may be considered here, with a view to ascertaining the circumstances

under which this condition may be enforced after completion. The true theory of the operation of this condition appears to be as follows: While the contract is still executory, and rescission upon ordinary equitable grounds is therefore still possible, the condition would appear simply to provide an additional remedy, alternative to that of rescission. But rescission may become impossible, either by the contract having been executed, or by the purchaser having otherwise affirmed the contract. In such cases, it is a question of intention only whether the remedy by way of compensation for the error, misstatement, or omission remains, although the other remedy has become impossible. It is true that where parties enter into a preliminary contract, which is afterwards to be carried out by a deed, the contract becomes extinguished in the deed when it is executed, and can no longer be looked at for any purpose. But the ordinary contract for compensation is not one which, according to the interpretation which the courts have put upon the language of the parties, is intended to be carried out by the deed of conveyance, but continues to exist outside it. It does not merely cover the interval before the formal deed of the conveyance, but continues to exist after it. This must be taken to be finally settled by the authorities. The condition for compensation thus, after conveyance, gives a remedy, *which would not exist in its absence.*"

There is no allegation in this case of insolvency or other ground of equitable interference, nor is there anything in the case which renders it like that of Callis v. Cogbill, 9 Lea, 138. It would seem, therefore, that the only remedy left to the plaintiff is an action at law upon the covenant of warranty. The plaintiff's right of action is against the personal representative of the deceased vendor, the other defendants to this bill being no parties to the deed executed, and their only liability as heirs at law of the deceased vendor being limited to the property which descended to them on the death of the ancestor, and which might be subjected, on proper statutory proceedings, after an unsatisfied recovery against the personal representative.

The plaintiff is the victim of fraud, but in the situation in which the case is now found, yielding, as I must, to the authority of controlling cases, I am unable to bring myself to think that the bill can be sustained in this court for the purpose of administering either the primary or secondary relief; the title and relief sought in the secondary aspect being both legal.

The bill will consequently be dismissed, with costs, without prejudice to an action at law, or such other suit as the plaintiff may be advised can be successfully prosecuted, except a suit for rescission like this.