### SECURITY SAVINGS & LOAN ASS'N v. BUCHANAN et al.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

#### No. 226.

1. EQUITY—PLEADING—MULTIFARIOUSNESS.

A bill brought by the S. Savings & Loan Association against several defendants alleged that five of the defendants, constituting the plaintiff's local board, at a place distant from its home office, charged with the duty of examining and reporting upon applications for loans, had made a grossly false and deceptive report upon an application; that two of the defendants, also members of such board, had given a note and mortgage to secure the loan so procured; that two other defendants, who were insolvent, had become sureties for the construction by the borrowers of a building on the mortgaged land, which had never been begun; and that the application for the loan and accompanying paper, the note, mortgage, and bond, had all been lost. Thereupon the bill prayed for recovery against the borrowers upon the note; foreclosure of the mortgage; establishment of the lost instruments; recovery against the sureties on the bond; and damages against the other members of the local board for their fraudulent representations. *Held,* that the bill was multifarious.

2. SAME—ADEQUATE REMEDY AT LAW.

*Held,* further, that, as to the members of the local board other than the borrowers, the complainant had a complete and adequate remedy at law.

3. SAME—ESTABLISHMENT OF LOST INSTRUMENTS.

Equity will not entertain a suit to establish a lost instrument merely as a piece of written evidence to assist in sustaining an action for a tort.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

This was a suit by the Security Savings & Loan Association against J. S. Buchanan, A. A. Crabbs, Anna Crabbs, A. P. Petty, W. H. Hutsell, E. C. Swabey, O. B. Jenkins, and W. H. Thomas for the foreclosure of a mortgage and other relief. The circuit court dismissed the bill. Complainant appeals.

As shown by the bill, the complainant in this case is a corporation organized under the laws of Minnesota, having its home office there, and is engaged in the business of a building, savings, and loan association. It was doing business in Tennessee; and for the purpose of receiving applications for loans, and transmitting such applications to the home office with such necessary information as would be required to determine the value of the security offered for the proposed loans, it had appointed a local board at Dayton, in that state. This local board consisted of five members, all of whom were shareholders in the corporation, and are defendants in this suit. Thomas was president; Buchanan, treasurer; Crabbs, secretary; and Petty and Hutsell, ordinary members. On December 17, 1892, the defendants Buchanan and Crabbs made an application to the complainant, through the local board, for a loan of $4,000, and proposed to secure it by a mortgage on a lot in Dayton, on which, as they stated, they were building a two-story brick building 50 feet wide and 100 feet long, with stone foundations. They stated that the lot without the building was worth $1,500; that at the last assessment it was valued at $1,000; that the value of the building they were then erecting was

$8,000; and that it was at the business center of the town. The local board forwarded the application and statement to the home office of the company, and sent therewith a "confidential appraisal of property," in which the board confirmed, as of matters within their personal knowledge, the statements above mentioned of the proposed borrowers, and stated that they considered "this a good risk." This appraisal was signed by all the five members of the board who are above named. On the faith of these statements made by the defendants Buchanan and Crabbs, and by the local board, the complainant granted the application, and agreed to pay the $4,000 in three installments,—one of $1,000, in January, 1893; another of $1,000, in February; and the other $2,000, in May following. On January 6, 1893, Buchanan and Crabbs and Anna Crabbs, the wife of the latter, executed and delivered to complainant a note for $4,000, and the proposed mortgage on the Dayton lot to secure the same, in the form of a deed of trust to the defendant Thomas for that purpose. There were some minor details about the time and mode of application of the payment to be made by the borrowers, but they are not material to the decision. On January 28, 1893, Buchanan and Crabbs, with the defendants Swabey and Jenkins as their sureties, executed and delivered to the complainant a bond in the sum of $4,000, conditioned that the building on the mortgaged lot should be completed at a cost of $8,000, and that all claims for which liens might be filed should be paid. The complainant paid the January and February installments of $1,000 each to Buchanan and Crabbs as agreed. It turned out that all the statements made as above by Buchanan and Crabbs and by the local board to the complainant were false. The lot was not worth more than $100; had never been assessed for $1,000, nor for any sum whatever separately from other land; no building was ever constructed or ever begun on said lot; the lot was a mile away from the business center of the town, and surrounded by vacant town lots; Buchanan and Crabbs were insolvent, and failed in April following; and it likewise developed that Swabey and Jenkins, the sureties on their bond, were insolvent, and that nothing could be collected from any of the four. No part of the loan was ever repaid, and, according to the terms thereof, all is now due. All these things are set out in the bill with much amplification. And it is further alleged that the above-mentioned application, appraisal, note, and bond have, without the fault of the complainant, been lost, and cannot now be found; that it has copies of the application and appraisal, but not of the note or bond. The prayer of the bill is for the recovery from Buchanan and Crabbs of the money loaned, for the foreclosure of the deed of trust, for the setting up of the lost instruments by the establishment of copies, for a recovery from Swabey and Jenkins on their bond of the amount of the loan, and for a decree against Petty, Thomas, and Hutsell, "on account of their fraudulent representations and actions," for the amount of said loan.

The defendant Hutsell appeared, and demurred to the bill, and set down the following causes of demurrer: (1) That it appears from the complainant's own showing, in and by said bill, that it is not entitled to the relief prayed by the bill against this defendant. (2) That the citizenship of the parties to said bill is not properly set forth or stated, it appearing from the allegations of the bill that the plaintiff is, under the laws of the state of Tennessee, a citizen of said state, and not of the state in which it was incorporated. (3) That it appears from the plaintiff's own showing that it was chartered under the laws of a foreign state, and that it has attempted to do business in the state of Tennessee, and has done business therein, yet it nowhere appears or is alleged that the plaintiff has complied with the acts of the general assembly of Tennessee, with respect to foreign corporations transacting business in said state, being the act of 1891, c. 122. (4) That said bill is multifarious, in joining several distinct and separate causes of action in one and the same suit. (5) That there is a misjoinder of parties defendant in said bill. (6) That said bill seeks to enforce several separate and distinct liabilities against this defendant. (7) That there are no sufficient allegations in said bill to charge this defendant, in this court; but, if the plaintiff has any remedy, it is by action at law for damage. The court below sustained the demurrer, founding its opinion upon the seventh cause assigned therein. The bill was dismissed, and the complainant appeals.

T. M. Burkett, W. B. Miller, and F. L. Mansfield, for appellant.
Pritchard & Sizer, for W. H. Hutsell, appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS,
District Judge.

Having stated the case as above, SEVERENS, District Judge,
delivered the opinion of the court.

Although the demurrer was sustained in the circuit court upon
the one ground stated in the opinion of that court, the question for
us is whether it should have been sustained for any of the causes
therein shown. There can be no doubt that, upon the facts stated
in the bill, the appellee, Hutsell, was guilty of a gross fraud upon
the complainant, and that an action at law would lie to recover the
damages occasioned thereby. It was held by the court below that
that was an adequate remedy, and hence that a suit in equity could
not be maintained; citing Ambler v. Choteau, 107 U. S. 586, 591,
1 Sup. Ct. 556, and Buzard v. Houston, 119 U. S. 347, 354, 7 Sup. Ct.
249. The only ground we can see for thus joining Hutsell, and
the cause of action against him, in this litigation, is that the security
of the note and mortgage of Buchanan and Crabbs may first be
liquidated in order to ascertain the extent of the damages arising
from Hutsell's alleged fraud. But the value of the security could
be ascertained for the same purpose in a suit at law with equal
facility. No discovery is here prayed, and answer under oath is
waived. The case is therefore, as against Hutsell, a mere graft
of a strictly legal cause of action upon a bill in equity, the primary
purpose of which is to foreclose a mortgage. We do not think the
legal controversy can be properly litigated in such a suit. 1 Beach,
Mod. Eq. Prac. § 117; Fougeres v. Murbarger, 44 Fed. 292; Wil-
liams v. Jackson, 107 U. S. 478, 2 Sup. Ct. 814. It is quite true that
fraud is a ground upon which a court of equity is accustomed to
afford relief, and this in a great variety of circumstances. But, in
doing so, it respects the rule that its jurisdiction should not be
exercised where there is an adequate remedy at law. That is the
present case. No preventive relief is prayed, and nothing cor-
rective other than a mere judgment for damages upon a trans-
action which is passed and confirmed. Parkersburg v. Brown, 106
U. S. 487, 1 Sup. Ct. 442; Buzard v. Houston, 119 U. S. 347, 7 Sup.
Ct. 249.

In the case of Smith v. Bourbon Co., 127 U. S. 105, 8 Sup. Ct. 1043,
a judgment creditor, upon the return unsatisfied of his execution
against his insolvent debtor, filed his bill against the debtor, a rail-
road company, and the county of Bourbon, from which, as was al-
leged, there were certain bonds due, but not yet delivered to the
defendant railroad company. The object of the bill was to compel
the railroad company to assign to complainant its claim for the
bonds, and to compel the county to deliver the bonds to complain-
ant in satisfaction of his judgment. It was held that the relief
prayed for against the railroad company might be granted, and
that it might be compelled to assign its claim to complainant with

the right to sue for the bonds in the name of the company, but that the relief prayed for against the county was without the jurisdiction of the court, being of a legal nature and enforceable by mandamus, and the bill was dismissed as to that defendant. Near to this question is that raised by the cause of demurrer assigned, upon the ground that the bill is multifarious. The relief prayed is specific. The objects of the bill are that the mortgage may be foreclosed; that the application for loan, the appraisal, the note, and bond, which are alleged to have been lost, may be set up and established; "that judgment be declared on said bond" against Swabey and Jenkins; and that Petty, Thomas, and Hutsell be declared liable to complainant for their fraudulent representations.

Here are several independent causes of action, each of which is sufficient in itself to support a separate suit. Some of the defendants are concerned with some of the causes of action, and not with others, while others of the defendants are not concerned with those which involve the former. Besides this, as to some of the causes of action, the defendants therein are entitled to have the issues tried by a jury, of which right they would be deprived if the complainant were permitted to draw them all into a court of equity. That is the predicament of the defendant Hutsell. The rule against such practice is well established. Campbell v. Mackay, 1 Mylne & C. 603; Brown v. Deposit Co., 128 U. S. 403, 9 Sup. Ct. 127; Newland v. Rogers, 3 Barb. Ch. 432; Association v. Denton (recently decided in this court) 65 Fed. 569; 1 Daniell, Ch. Prac. 335. In the case of Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, much relied on by the complainant, no objection was taken to the bill until the case was brought to the hearing, and much stress is laid upon this circumstance in the opinion. The defendant Tyler was an officer in the corporation, and had been the efficient agent in perpetrating the fraud complained of. The bill prayed for a discovery, and Tyler was a necessary party for the obtaining of such relief. Here no discovery was sought by the bill, and the objection was taken seasonably and in the proper mode. We are of the opinion that there is in this bill such misjoinder of causes and parties as to render it subject to the objection of multifariousness.

The complainant claims that its right to come into equity is supported by the fact that it has lost certain instruments which it deems necessary to have set up and established as the basis of its recovery. The "instrument," so called, on which it charges Hutsell, and which is alleged to be lost, is not any instrument of title to corporeal property, nor a bond or note, nor, indeed, a contract in writing inter partes, whereby an obligation was assumed, but a mere piece of written evidence upon which, with other proof, the complainant seeks to charge the defendant with a tort. This is not an instrument such as a court of equity undertakes to establish on an allegation of its loss. The jurisdiction of equity in this class of cases has been extended beyond the cases of instruments under seal, of which profert could not be made at common law, and includes those of lost notes and other writings obligatory, in which the court may require the complainant to give an indemnity to the

defendant against vexation by any other person who may afterwards come with the supposed lost instrument, claiming under an assignment. Some of the authorities manifest an unwillingness to go beyond the cases of negotiable instruments. It is not necessary for us to decide precisely where the limit should be fixed. It is sufficient to say that there is, in this case, no ground which has been suggested as the basis of relief in such cases, upon which the court could take action. 2 Pom. Eq. Jur. §§ 831, 832; 1 Story, Eq. Jur. §§ 81–88.. Upon proper application to the court below, it is quite likely that the court on sustaining the demurrer might have given complainant leave to trim down the bill as respects parties and subjects, so that it would have been allowed to proceed for its proper purpose. But it has chosen to stand by its bill, and bring the case here on appeal. In our opinion, the decree below was right in sustaining the demurrer, and in dismissing the bill; but we think that should have been done without prejudice, the case having been disposed of on demurrer, and not on the merits. Durant v. Essex Co., 7 Wall. 107, 113; Cattle Co. v. Frank, 148 U. S. 603, 612, 13 Sup. Ct. 691. For that reason, the case must be remanded to the court below, with instructions to modify its decree by adding a provision that the dismissal of the bill be without prejudice to any other remedy to which the complainant may be entitled.