# MANUELA MANRIQUE DE LARA DE GARROSI, Plff.,

### *v.*

## JUANA MARIA GONZALEZ, Dfts.

---

San Juan, Equity, No. 961.

### CANCELATION OF FRAUDULENT CONVEYANCE.

Equity—Pleading—Counterclaim.

1. Although the equity rules provide that when no reply is made to a counterclaim defendant may take a decree *pro confesso*, it is too late to seek such decree at the final hearing; moreover, a decree *pro confesso* will not be granted when the relief sought by the counterclaim will necessarily follow a decree for the defendant upon the bill and answer.

Garrosi v. Gonzalez.

Equity—Jurisdiction—Adequate Remedy at Law.

> 2. Equity has jurisdiction of a suit to annul a cancelation of a mortgage and to foreclose that mortgage.

Courts—Jurisdiction—Citizenship.

> 3. After submission of a case to the court upon final hearing, without raising the point that an allegation as to citizenship is not true, an amendment will be held to have been allowed to conform to the proof, where the amendment does not divest the court of jurisdiction.

Mortgages—Transfer by Husband to Wife.

> 4. A transfer to a wife where the husband pays the consideration is within the rule making void all transfers between husband and wife.

Same.

> 5. Where, however, the husband acted as agent of a third party in the transfer to his wife, the third party cannot set up the incapacity.

Mortgages—Recording—Third Parties.

> 6. An unrecorded transfer of a mortgage is binding upon the parties to the transfer; they are not third parties.

Gifts—Husband and Wife.

> 7. Gifts between a husband and wife are void *per se.*

Contracts—Acceptance.

> 8. Consent is not destroyed by the fact that one party thought she was getting a deed while in fact she got a mortgage; if a contract has been acted upon by the parties the consent of the contracting parties is present and the contract will be enforced.

Contracts—Consideration—Husband and Wife.

> 9. A transfer by a husband to a wife, made in consideration of her abandoning divorce proceedings for which she had cause, is a contract for a good consideration, and is valid and enforceable; a court of equity will not disaffirm such a contract after the reconciliation based upon it has been consummated.

Opinion filed April 24, 1916.

———

*Mr. F. H. Dexter* solicitor for plaintiff.

Garrosi v. Gonzalez.

*Mr. José A. Poventud* solicitor for defendant.

HAMILTON, Judge, delivered the following opinion:

The bill in this case was filed December 22, 1912, and relates to a mortgage upon 103.89 acres of land known as the Hacienda Concepción in the Barrio of Añasco Abajo, Porto Rico. The bill alleges that Antonio Manrique de Lara was the owner, and on May 9, 1900, executed a mortgage thereon to the American Colonial Bank for $2,400 payable in five years, with interest at the rate of 12 per cent per annum, and that subsequently, shown to be February 27, 1908, the bank transferred the mortgage to defendant Juana María Gonzalez, in whose name it was inscribed in the proper Registry of Property. That on June 11, 1909, Juana María Gonzalez transferred to the plaintiff the mortgage, which at that time, including interest, amounted to $3,405, by a public notarial document, which, however, was not registered. This transfer was made by this defendant through her attorney in fact, Tomas Garrosi, it being recited that he represented her. He was at the same time the husband of the plaintiff, who was in turn the daughter of Antonio Manrique de Lara, the original owner. Tomas Garrosi acquired the title from the heirs of Manrique de Lara on July 21, 1914, by a public notarial deed. Tomas Garrosi deeded the dominion title of said property to the defendant, Juana María Gonzalez, for a recited consideration of $8,000 of which $3,830 was cash, and $4,420 was not paid in cash, but was to be paid by the defendant grantee to extinguish the mortgage in favor of Juana María Gonzalez, although this mortgage had already been transferred by the defendant to the plaintiff. That

upon the presentation of the deed to the Registrar of Property
he inscribed it in the name of the defendant, and on May 7,
1915, canceled the mortgage, because defendant appeared on
the records to be the owner of both the land and the mortgage.
The bill further alleges that the cancelation of the mortgage
was improper as against the plaintiff, inasmuch as no rights of
third persons have intervened.  Plaintiff prays that the inscrip-
tion canceling the mortgage be annulled, and that the mortgage
be foreclosed in her favor and the property sold to satisfy the
same.  The answer admits the transfers, but sets up as defenses
that the transfer of the mortgage to the plaintiff was void because
made by a husband to his wife, and because there is no con-
sideration for it, and that, as the property was owned by the
plaintiff's husband, she could not acquire a mortgage on it.
The answer further sets up the above facts in a counterclaim,
and prays that the attempted assignment to the plaintiff on
June 11, 1909, be declared absolutely null and void.  A motion
was made to strike out certain allegations of the answer and
counterclaim.

The case was tried upon oral and documentary evidence
March 16, 17, 1916.

Except for a confusion on the part of the plaintiff while
a witness in claiming the paper made to her was a deed instead
of an assignment of mortgage, there is not much contradiction
as to the facts of the case.  The testimony developed the fact
that the husband and wife did not live amicably together, and
that there had been steps projected looking to a dissolution of
the marriage relation, and that the transfer of the mortgage
interest in question was made by Garrosi to his wife in 1909
in settlement of that difference.  The parties became reconciled,

Garrosi v. Gonzalez.

and Garrosi made this gift to his wife and also paid her counsel fees. Is this gift enforceable under the civil law, under these circumstances?

1. Before taking up the merits, there are certain preliminary questions raised which should be disposed of. In the first place, the defendant seeks to take advantage of the fact that no replication has been filed to her counterclaim. New equity rule 31 provides that "if the answer includes a . . . counterclaim, the party against whom it is asserted shall reply within ten days after the filing of the answer . . . in default of a reply a decree *pro confesso* on the counterclaim may be entered as in default of an answer to the bill." In the case at bar a counterclaim is made a part of the answer, and no specific reply was made thereto. A decree *pro confesso,* however, is the penalty, and none was sought before the hearing. Parties must be held to waive preliminary questions when they go into the merits of a case. In the case at bar, moreover, it is doubtful whether the so-called counterclaim should be considered as one. The only relief it seeks is the cancelation of the unrecorded transfer of mortgage, upon which the plaintiff sues. Necessarily if she fail in her suit it will be because the transfer for some reason is unenforceable, and a decree against the plaintiff will therefore give the defendant the same remedy which she seeks by her so-called counterclaim. This is not the office of a counterclaim. No decree *pro confesso* can be entered under the circumstances, and the motion to strike parts of answer and counterclaim should be granted.

2. The defendant claims that the remedy sought by the bill is really one for the recovery of money, and that in such case a bill in equity does not lie. Where compensation in money

Garrosi v. Gonzalez.

will afford a party complete and sufficient relief, the law is adequate. Gaines v. Miller, 111 U. S. 395, 28 L. ed. 466, 4 Sup. Ct. Rep. 426. Plaintiff will be relegated to his action at law if only damages or the payment of money is sought by the bill and that might be recovered at law. Security Sav. & L. Asso. v. Buchanan, 14 C. C. A. 97, 31 U. S. App. 244, 66 Fed. 799.

It does not appear, however, that such is the case at bar. The gist of the bill is the foreclosure of an alleged mortgage, and incidentally the annulment of an alleged cancelation of this mortgage. The net result of the remedy would no doubt be the sale of the property and the recovery of its value; but foreclosure of a mortgage is, nevertheless, a well-known head of equity jurisprudence.

3. The defendant further claims that, while the plaintiff has proved herself to be a citizen of France, she has not proved that the defendant is, as alleged, a citizen of Spain, and that on the contrary the evidence tends to show that the defendant is a citizen of Porto Rico. This point, however, was not made upon the trial, and if it had been an amendment would have been allowable to conform the pleadings to the proof. Under the Foraker Act and its amendment, March 2, 1901 (31 Stat. at L. 953, chap. 812, Comp. Stat. 1913, § 3793) a foreigner may sue an American, which embraces also a Porto Rican. Pares v. Cordova, 6 Porto Rico Fed. Rep. 173. So that, if such an amendment was made, the case would have been within the jurisdiction of the court. After submission without raising the point, the amendment will be held to have been allowed, and if necessary it is now allowed *nunc pro tunc*.

4. In form at least the mortgage transfer in question was

not by a husband to his wife, but by the defendant to the wife. The transfer recites that the consideration was paid by the plaintiff out of her own money, and the recitals are as formal as can be made even under the civil law. In point of fact, however, there seems to be no doubt that the wife had no property, and that the payment was actually made by the husband.

Section 1361 of the Porto Rico Civil Code forbids sales between husband and wife. It reads as follows: "The husband and the wife cannot mutually sell property to each other, except in case the separation of property has been agreed upon or when a judicial separation, of the said property should have taken place, authorized in accordance with the provisions of chapter 6th, title 3d, of this book."

The commentator Scaevola (vol. 23, page 396) notes that as between husband and wife incapacity is the rule and capacity is the exception. This is reinforced by the decision of the Convention or Directorate of the Registries December 6, 1898, given by Scaevola, to the effect that a contract of sale of property belonging to a third party, made through the husband of the grantee as attorney in fact, is void. In other words, the registrars hold that the statute covers the case where the husband acts for another, as much as the case where he acts directly for himself. There is no doubt that the assignment of the mortgage is in effect a sale. Civil Code, § 1431, reads as follows: "The sale or assignment of a credit includes that of all the necessary rights, such as the security, mortgage, pledge, or privilege."

The evidence seems to show that this was the reason why the transfer of the mortgage was not recorded, the registrar

VIII. Porto Rico—37.

holding that it was void. This seems to be the law, unless the circumstances of the case constitute an exception.

5. It does not lie in the mouth of the defendant to deny the capacity of her attorney in fact. So far as she is concerned the transfer was valid unless the law is to be held as forbidding it in all cases on grounds of public policy growing out of the marital relation. Under § 1186 of the Porto Rico Civil Code, "public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter. They shall also be evidence against the contracting parties and their legal representatives with regard to the declarations the former may have made therein."

In the case at bar the transaction is legally between the defendant and the plaintiff. The fact that the plaintiff's husband was the defendant's agent does not change the real character of the transaction as between the parties. The effect, so far as concerns the husband, will presently be considered; but now the point is as to whether the defendant, the principal, can set up any defect on the part of her agent. The evidence seems to show that the defendant held him out as representing her; and in equity at least she cannot now, after the transaction has been closed, set up any lack of power in her agent.

6. It is urged, however, by the defendant that a mortgage can only be alienated to a third person under the formalities required by law. Civil Code, § 1779. And a formality required in art. 152 of the Mortgage Law is that "a mortgage credit may be conveyed or assigned to a third person . . . provided . . . it be recorded in the registry." In other words, that an assignment of a mortgage is not complete until

registered. Article 187 of the Regulations for the Execution of the Mortgage Law. Registration, however, in general is for the benefit only of third parties; that is, according to art. 27 of the Mortgage Law, "those who have not participated in a recorded instrument or contract." The more particularly is this true in a case like the present, where the evidence shows that the plaintiff did her part in seeking to have the transfer registered. It is quite true that the law gave her the right of appeal from the register's decision, and that she did not take advantage of it. Nevertheless, the defendant must be held to have known of her own transfer, as a matter of law, and in all probability did know of it, as a matter of fact. She is not within the protection of the law as to third persons.

7. There is no question that the relations of husband and wife are governed by the local statute, and in particular as to lands are governed by the law of the country where the land lies. In the case at bar this is the Civil Code of Porto Rico. Monreig v. Parker, 6 P. R. Fed. Rep. 595; Garrozi v. Dastas, 204 U. S. 64, 51 L. ed. 369, 27 Sup. Ct. Rep. 224. The defendant urges that the local law forbids gifts between husband and wife, and that, therefore, the transfer of the mortgage in question is invalid. The sections of the local Civil Code bearing on the subject are as follows:

"Sec. 1301. All gifts between spouses bestowed during the marriage shall be void. Moderate gifts which spouses bestow on each other on festive days for the family are not included in this rule."

"Sec. 1282. Persons who may be joined in matrimony may, before celebrating it, execute contracts, stipulating the conditions for the conjugal partnership with regard to present and future

property, without any other limitations than those mentioned in this Code. In the absence of contracts relating to property, it shall be understood that the marriage has been contracted under the system of legal conjugal partnership."

"Sec. 1287. After the marriage has been celebrated, the marriage contract executed prior thereto cannot be changed, whether present or future property is involved.

"Sec. 1288. Marriage contracts and modifications made therein must be contained in a public instrument executed before the celebration of the marriage. Property in the condition referred to in § 1291 is excepted from the preceding rule."

"Sec. 1361. The husband and the wife cannot mutually sell property to each other, except in case the separation of property has been agreed upon or when a judicial separation of the said property should have taken place, authorized in accordance with the provisions of chapter 6th, title 3d, of this book."

The same general policy of the law against contracts between husband and wife is found in many other jurisdictions. Thus, such a conveyance is forbidden in Rush v. Landers, 107 La. 549, 57 L.R.A. 353, 32 So. 95. Under the Spanish Civil Code donations between spouses are void *per se,* and not subject to ratification. 21 Scaevole, Civil Code, p. 355. Manresa holds to the same effect, as follows: "Gifts between spouses are, therefore, void as a general rule. This means that they do not legally exist. The matter is not, in our opinion, a voidable act at the option of the donor, but an act void *per se* or *ab initio,* because to call it voidable would be equivalent to leave the compliance of the law at the will of the spouses themselves." Manresa, Commentaries on the Civil Code, p. 269.

Garrosi v. Gonzalez.

It is a legal precept based upon grounds of general public interest.

8. It is true that in the case at bar the transaction is recited in a very formal manner, but this does not control in equity and indeed not under the local law. Mortgage Law, art. 40: Rosado v. Rosado, 17 P. R. R. 447; Monagas v. Albertucci, 17 P. R. R. 684, s. c. 235 U. S. 83, 59 L. ed. 140, 35 Sup. Ct. Rep. 95; Gallardo y Seary v. Noble, 236 U. S. 138, 59 L. ed. 503, 35 Sup. Ct. Rep. 280. The whole matter being raised by the answer as well as by the bill, and evidence being introduced to the whole issue, the question can be considered in full. It is true that the plaintiff seems to have thought she was getting a deed instead of a mortgage assignment, and it is therefore claimed by the defendant that, as she did not understand the transaction, the acceptance required by law did not exist.

Section 1228 of the P. R. Civil Code provides: "There is no contract unless the following requisites exist: (1) The consent of the contracting parties. (2) A definite object which may be the subject of the contract. (3) The cause [consideration] for the obligation which may be established."

Section 637 of the Porto Rico Civil Code provides: "A gift does not bind the donor nor produce any effect until accepted."

Section 641 of the Porto Rico Civil Code provides: "The acceptance may be made in the same instrument bestowing the gift or in a different one; but it shall produce no effect if not made during the life of the donor. If made in a different instrument the acceptance shall be communicated to the donor in an authentic manner, and this proceeding shall be recorded in both instruments."

There is no doubt under the evidence that the plaintiff ac-

cepted the deed, whether she thought she was getting one thing or another. She accepted whatever was given her, although the transaction seems now to be confused in her mind. Not only so, but acting upon this she became reconciled to her husband and again lived with him. If there ever was any doubt as to her attitude, she has now affirmed the transaction as it stands by suing on the instrument as it was written and now exists. All this added to the formal recitals of the deed itself amount to an acceptance necessary under law and equity. It may be added that there is no conflict with the law in this case. The Statute of Frauds as such does not exist under the civil law, but its general principles are universal principles of civilized intercourse, and will at least be enforced in equity. If a contract, even if imperfect at law for lack of formal acceptance, has been acted on by the parties, the consent of the contracting parties is present, and it will be enforced. Bigelow v. Porto Rico Planters Co. 7 Porto Rico Fed. Rep. 349.

9. The real consideration for the transaction was that it was in compromise of threatened proceedings for divorce, and the question arises whether this consideration under the Porto Rican law is adequate. The sections of the Civil Code bearing on the subject are as follows:

"Sec. 1715. No compromise can be made with regard to the civil status of persons, nor with regard to matrimonial questions, nor future support."

"Sec. 4. Acts executed contrary to the provisions of law are void except. when the law preserves their validity. Rights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person."

Garrosi v. Gonzalez.

A court of equity cannot interpose to give validity to a transaction which is void at law for want of the power to make it. Hedges v. Dixon County, 150 U. S. 182, 37 L. ed. 1044, 14 Sup. Ct. Rep. 71.

An exception recognized by § 1361 of the Civil Code, to the inhibition of the husband to sell to the wife, in where the separation of the property has been agreed upon or a judicial separation of the property has taken place. And further provisions to this effect are found in §§ 1342 and 1343, which are as follows:

"Sec. 1342. In the absence of a specific declaration of the marriage contract, the separation of the property of the spouses, during the marriage, shall not take place except by virtue of a judicial decree."

"Sec. 1343. The husband and the wife may request the separation of the property, and it shall be decreed, whenever the spouse of the plaintiff should have been condemned to a penalty which includes civil interdiction, or should have been declared an absentee, or should have given cause for divorce. In order that the separation may be decreed, it shall be sufficient to present the final judgment rendered against the guilty or absent spouse in each one of the three cases above mentioned."

There is no evidence that the husband had been condemned to such a penalty, or been declared an absentee, but the conduct of the parties seems to amount to an understanding that he had given cause for proceedings. Marriage and the continuance of that relation are of the highest importance to the state, and should be upheld by the courts in every reasonable manner. If the parties have differences which are based upon causes of divorce, and they undertake to settle and compromise the matter

Garrosi v. Gonzalez.

in such a way that the marriage relation is not dissolved, this constitutes a consideration of the greatest value. The highest grounds of public policy demand that such a compromise should be sustained. It is true that the exact cause of the threatened separation is not in evidence, but the courts will not be too curious in such matters. It may be to the public interest that the causes be not put in evidence. The interest of the state is not to inquire into the causes of difference, but to encourage a compromise by which the parties abandon their differences and become again in fact what they still remain in law, husband and wife. The case presented comes within the policy, if not within the words, of § 1343 of the Civil Code, and the judicial decree contemplated by § 1342 may in fact be rendered by this court if it approves the transaction between husband and wife. Such a compromise may be within the policy even of § 1301, as being a proper gift on such a day of rejoicing. A court of equity at least will not disaffirm such a contract after the reconciliation based upon it has been consummated. In the case at bar such a procedure would amount to a fraud upon the wife.

Whether, therefore, the transaction in question is to be considered as one between the plaintiff and her husband, or between the plaintiff and the principal defendant represented by the same husband, it follows that the defense set out is not good, and the parts set out in the motion should be struck out, that the plaintiff has made out her case, and a decree will be entered accordingly.

It is so ordered.