## RETTIG BEVERAGE CO. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. July 13, 1926.)

No. 3466.

**1. Intoxicating liquors ⬅275—Suit to enjoin nuisance is governed by rule of equity as to measure of proof required (Prohibition Act, tit. 2, § 22 [Comp. St. Ann. Supp. 1923, § 10138½k]).**

A suit under Prohibition Act. tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), to enjoin a nuisance, is a suit in equity, and, as the statute expressly declares to be "tried as an action in equity" and is determinable, not on the mere weight of evidence as at law, but in accordance with the rule of equity which regards the sworn answer of defendant as evidence, and requires that the evidence for complainant must be sufficient, not only to overcome the answer and supporting testimony, but to "move the conscience of the chancellor."

**2. Appeal and error ⬅1030—That improper procedure was followed is ground for reversal of decree, though same result might have been reached.**

While an appeal is from the decree of the court, and not from its reasons for entering the decree, if decision was reached by erroneous procedure, the case was not properly tried, and the decree must be reversed, though the same result might have been reached had proper procedure been followed.

**3. Judgment ⬅17(2).**

No judgment is just if not obtained by lawful process.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the United States against the Rettig Beverage Company. Decree for complainant, and defendant appeals. Reversed and remanded.

William A. Gray, of Philadelphia, Pa., J. Paul McElree, of West Chester, Pa. and Arthur L. Shay, of Pottsville, Pa., for appellant.

George W. Coles, U. S. Atty., and E. C. Pfeiffer, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The main question raised on this appeal is whether, in deciding a case of this kind, the court is governed by the rule of evidence which is applied in law cases or the rule applied in equity cases. The question is difficult to state understandingly before the pleadings and the facts of the case and the substance of the decision are given.

## The Pleadings.

The United States filed a bill in equity under section 22, tit. 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½k), charging the respondent corporation and its officers with maintaining on its premises a common nuisance as defined by section 21 of the act, and praying that the court abate the nuisance, first, by enjoining the respondents from manufacturing and selling intoxicating liquor on the premises, and, second, by closing the premises to occupancy and use for one year. The corporate respondent and its president made sworn answers denying all the incriminating averments of the bill, and, as a separate defense, averring that, under a permit, they did manufacture and keep on the premises beer containing more than one-half of one per cent. of alcohol, as they lawfully and necessarily may do in the course of its manufacture, but that they proposed before any such beer should be sold to reduce its alcoholic content to the lawful percentage, as they were bound to do.

## The Facts.

There is little dispute about the actual occurrences; the trouble is with the inferences properly to be drawn from them and particularly with the rule which should be used in drawing the inferences. The facts and the inferences which the opposing parties attribute to them, briefly stated, are as follows:

As the first step in executing a search warrant, a prohibition agent went to the office of the company and made his business known. While he was courteously received and was told that every facility would be given him to make a thorough search, some delay ensued. At the same time other prohibition agents went to a side door of the brewery where they heard within bells ringing, buzzers sounding, and noises similar to such as are made by knocking in the bungs of barrels. Without waiting for the agent at the office, these men broke down a door and entered a racking room or loading room, where they found nine one-half barrels with the bungs out and beer therefrom, aided by water from a hose, running into a sewer. The employees were standing around doing nothing. An empty motor truck was nearby. Samples were taken of the remaining contents of the running barrels, and analyses, subsequently made, showed 3.8 per cent. of alcohol by volume. There was testimony, vigorously contradicted, that an officer of the company suggested that a little water be added to the samples. Unexplained, these facts would without doubt sustain an inference of guilt. But the respondents attempted to explain them by testifying that bells and buzzers were located about the brewery for the purpose of calling the brewmaster to the office, and that just at this time he was being called in this way. While admitting the beer was of high alcoholic content, they said that it had been mistakenly barreled from a vat containing beer not yet reduced to the lawful alcoholic content, and that, when the agents broke into the room, this mistake was being rectified by dumping the beer. Further, a defendant testified that the truck had brought to the brewery a number of gas tanks which had been unloaded, and maintained that from the mere presence of the empty truck no inference of an intention to load the beer can be drawn. There was no evidence of sales.

## The Decision.

After the hearing, the learned trial court entered a decree against the respondents, finding they had maintained a common nuisance as defined by the statute, and providing for its abatement by injunction against the further manufacture and sale of beer on the premises and against their occupancy and use for one year, first delivering an opinion which shows quite clearly by what processes and by what rule of evidence it had reached its judgment, the pertinent parts of which are the following:

"We place of record, for whatever value it may be to the defense, that we refuse to make the finding that the witnesses for the defense are unworthy of belief. This refusal includes not merely a refusal to find that they are intentionally false or that they do not believe in the truth of the defense, but also a formal refusal to make the negative finding that we believe that the defense set up is not true. We do not doubt that there are sincere believers in its truth, and that these include the counsel who conducted the trial on behalf of the defense and the general counsel of the defendant, and we are not ready to make the finding that the truth of the case is not with the defendant because we have not gone into this. * * * The only refuge of a trial court is in the resort to its judgment of the weight of the evidence.

"Our finding in the instant case is that the weight of the evidence is with the plaintiff and we accordingly find the truth of the averments of the bill and that the prayers of the bill should be granted.

"We have made our findings with what

may seem to be meticulous care, and indeed the findings made may seem to conflict with the refusals to find because belief in one thing is necessarily disbelief in its opposite. We have made the distinction, however, in order to squarely present two points and to raise two questions. One is this: The proceeding is in form a proceeding in chancery. The objective in all such proceedings is to 'move the conscience of the chancellor,' and to do this a higher degree of proof is required than what is needed to found a verdict or a judgment at law. The first question then becomes whether the equitable doctrine applies. The view we take is that the proceeding, although in form a bill in equity, is purely statutory, and that the command of Congress is that the court shall decide all questions of fact raised in accordance with the weight of the evidence rule and not the rule which pertains in chancery. In the chancery view, an answer under oath is part of the evidence from the beginning. It follows that the complainant by his proofs must not only establish what would be a good prima facie case without the answer, but the proofs must also overcome the answer.

"A wholly different view prevails at law. The plea of the defendant forms no part of the proofs. If the plaintiff makes out a prima facie case, the burden shifts, and the defendant then must establish the facts on which rests the defense. We wish to make it clear that this is the position in which we have put this defendant.

"The second question then becomes whether it has established its defense. Hence we have made three findings:

"(1) A prima facie finding of the fact averments of the bill.

"(2) A refusal to find the facts set up by the defense.

"(3) A finding that the weight of all the evidence is with the plaintiff and a finding in its favor because of this."

### The Discussion.

Restated in the light of the decision, the question of law on this appeal is whether the proceeding, although in form in equity, is purely statutory, and is to be determined on the facts by the weight of the evidence rule applicable in cases at law or by the rule calling for a higher degree of proof which pertains in equity. It is clear that the learned trial court, in construing the statute against the equity rule, so framed its findings as, first, to present the question squarely to an appellate court, and, next, to make escape from a square answer impossible.

The trial court's conception of the character of the action and its pronouncement of the rule there to be followed in finding facts, to be valid, must have the sanction of the statute. Therefore we turn to the National Prohibition Act to find what the Congress did and what it intended. Manifestly, it regarded the manufacture and sale of intoxicating liquors, except in certain instances, a national evil. In order effectively to end that evil, it determined by the act to make the manufacture and sale of liquor a crime and provided punishment for its commission. But it went further, and, fearing that punishment for the manufacture and sale of liquor might not wholly curb the evil, declared by section 21 (Comp. St. Ann. Supp. 1923, § 10138½jj) that any place where the forbidden acts are committed is a common nuisance, and that any person who maintains such a nuisance shall be guilty of a misdemeanor. In doing this the Congress resorted to the criminal law. It then, by section 22, resorted to a civil procedure by which to enjoin the nuisance.

Thus by one action the Congress imposed a criminal punishment for the thing done and by the other it provided against its repetition. While both of these procedures are directed to the cure of the same evil, they are wholly dissimilar in character; one may be pursued without the other. We may, for present purposes, assume that the Congress did not intend that the action to enjoin a nuisance, which it prescribed by section 22, tit. 2 of the act, should be a criminal action. If a criminal action, there conceivably might arise a question whether trial of a defendant in a way other than by jury is in violation of the Sixth Amendment to the Constitution of the United States. Regarding the action as civil, the question presently before us is whether it is one at law or in equity. If at law and to be tried and decided by a judge on the weight of the evidence rule applicable in law cases, when as here the parties have not waived trial by a jury (Rev. Stat. §§ 649, 700 [Comp. St. §§ 1587, 1668]), it might, quite possibly, be contrary to the Seventh Amendment to the Constitution. But we have found nothing in the statute, even with the aid of industrious counsel, which indicates that the prescribed procedure is at law. On the contrary, it appears that the Congress, seeking a remedy, reached into the body of equity jurisprudence, found there an action of the kind it wanted, placed it in the statute, defined it as an action "to enjoin" a nuisance, stated where it should be brought, that is, "in any court having jurisdiction to hear and determine eq-

uity cases," indicated how it should be tried, namely, "as an action in equity," declared how it should be determined, that is, "on finding that the material allegations of the petition are true," and finally prescribed relief by injunction against the manufacture and sale of liquor on the premises and by an order closing them. This is all the statute says on the subject.

[1-3] We cannot agree with the learned trial court that "the proceeding, though in form a bill in equity, is purely statutory, and that the command of Congress is that the court shall decide all questions of fact raised in accordance with the weight of the evidence rule and not the rule which pertains in chancery." We regard the proceeding statutory only by adoption, and think that when the Congress adopted the proceeding it also adopted its pertinent rules; and, failing to find any mandate by the Congress that such a case shall be tried as an action at law, we are constrained to hold that, as the statute expressly declares, it shall be "tried as an action in equity." Union Pacific R. Co. v. Syas, 246 F. 561, 566, 158 C. C. A. 531. Trial in equity means trial according to the rules of equity, one of which supplies the scales by which evidence in such cases shall be weighed. This rule regards the sworn answer as evidence, and requires that the evidence for the complainant must be sufficient in volume, not only to overcome the answer and supporting testimony, but to "move the conscience of the Chancellor." The quantum of evidence necessary to conform to the rule is, of course, impossible of precise definition; yet quite possible of calculation in the mind of a Chancellor. If in entering the decree in this case the learned trial court had followed its conscience, moved by the evidence, this reviewing court would have hesitated before reversing the decree. But we are confronted by a decree not so approached and confessedly not so entered, and we are asked by the government to affirm a decree entered in a case tried, as we now find, contrary to the rules of evidence, because of its contention that, even so, the facts of the case show the decree is right, and that is all we are concerned with. We feel that we are concerned with something more. Admittedly, an appeal is taken from the decree of the court, not from its reasons for entering the decree. Boise Water Co. v. Boise City, 213 U. S. 287, 29 S. Ct. 426, 53 L. Ed. 796; Security Ass'n v. Buchanan, 66 F. 801, 14 C. C. A. 97; Brennan v. Tillinghast, 201 F. 609, 120 C. C. A. 37; Clinton M. & N. Co. v. Cochran, 247 F. 449, 450, 159 C. C. A. 503; Standard Coal & Oil

Co. v. Printz Degreasing Co., 232 Pa. 64, 81 A. 129. But here we are concerned, not with the reasons which led the court to its decree, which have to do with the facts, but with the procedure the court pursued, which has to do with the law. If that were wrong (wholly aside from the reasons) the case was not properly tried, and, accordingly, the decree was not validly reached by the court of first instance where the decision primarily and fundamentally lay. No judgment is just if not obtained by lawful process. Union Pacific R. Co. v. Syas, 246 F. 568, 158 C. C. A. 531. Were we to take the record and try the case de novo instead of reviewing the case as tried, it is conceivable that we might, by applying the applicable equity rule of evidence, reach the same judgment and enter the same decree as the learned trial court; yet if we were to do this we should ignore the primary function of the trial court, which is that of trying the case, and disregard our appellate function of reviewing a case tried, and thus, in order to carry out our personal conception of justice, we should commit the offense of improvising a procedure opposed to that which has long governed the orderly administration of justice.

For the reasons given, we are constrained to reverse the decree of the District Court, and remand the case for a new trial in harmony with this opinion.